## COUGER et al. v. ALLEN.

### No. 12259.

Court of Civil Appeals of Texas. Fort Worth. Feb. 1, 1930.

McFarlane & McFarlane, of Graham, for appellants.

Marshall & King, of Graham, for appellee.

CONNER, C. J.

The appellee, S. J. Allen, instituted this suit on November 22, 1928, against John Couger to recover upon two promissory notes, each in the sum of $1,062.50. The notes purported to have been given by John Couger as the consideration for a deed of conveyance from Allen and wife to John Couger, dated the 12th day of September, 1925, in which the vendor's lien was retained to secure the

payment of said notes. The plaintiff prayed for judgment for the principal, interest, and attorney's fees due upon his notes, alleged to have been unpaid, and for a foreclosure of the vendor's lien upon all of the Luther Brawner survey of land, abstract No. 34, situated in Stephens and Palo Pinto counties.

The defendant Couger was cited and answered in his first amended answer and cross-complaint by demurrers, general and special denials, and specially that the notes declared upon were without consideration; that, at the time of the conveyance of the plaintiff to the defendant, plaintiff was without title; that the plaintiff's purported title was a deed from the sheriff at a foreclosure sale on the 4th day of August, 1925, ordered by a judgment of the district court of Young county, rendered at the June term, 1925, in a cause styled J. K. P. Hughes v. John Couger et al., Nos. 7748, 7749, and 7778, consolidated; that the plaintiff, Allen, had intervened in the cause in which said judgment was rendered and declared upon a note executed by the defendant for the sum of $2,500, dated July 1, 1922, executed by John Couger and Breckie E. Couger, his wife, to secure which John Couger had executed a trust deed to one C. F. Marshall, as trustee, covering about 1,000 acres of land, including said Brawner survey; that at the time of the execution of the said $2,500 note and the said trust deed the Brawner survey was the homestead of the defendant and wife, and was actually occupied as such at that time and for long prior thereto; that in said consolidated suit he had pleaded his homestead right, but by an agreement among parties and counsel, to which he was not a party and to which he did not consent or authorize, his homestead plea was ignored and foreclosure made with order of sale, which resulted in the sheriff's deed under which the plaintiff, Allen, claimed title at the time of the execution of the notes declared on in this suit; that defendant did not discover the fact of the foreclosure of the trust deed on his homestead until after the court had adjourned, whereupon it occurred to him that, if he would do equity, he might still retain his homestead, and it was thereupon agreed by him and Allen that Allen should bid at the sheriff's sale $2,800 for the land included within the trust deed and judgment of foreclosure that formed no part of defendant's homestead, the same being some 800 acres of a value largely in excess of the judgment rendered against Couger, and that he (Couger) would pay Allen the sum of $500, and that he had already paid the sum of $575, but that Couger had failed to bid the $2,800 for the sale of the excess acreage.

Breckie E. Couger intervened in the suit, and, so far as is necessary to state, alleged in substance that the Brawner survey had been the actual homestead of herself and husband, John Couger, since the year 1901; that she had not been cited to appear, and had not appeared, in the consolidated suit in which the judgment of foreclosure had been made, and that she had not authorized any one to appear and answer for her in that suit; that she had no knowledge of the foreclosure of the trust deed upon their homestead until service of citation upon her in the present suit, etc.

In reply, among other things, the plaintiff presented what is termed a plea in abatement, to wit:

"S. J. Allen v. John Couger No. ——

"In the District Court of Young County. December Term. A. D. 1928.

"Now comes the plaintiff herein, and says that the court should wholly abate and dismiss the cross action of the defendant John Couger and the Plea in Intervention of Breckie E. Couger for the following reason:

"That the identical matters and things attempted to be pleaded by said parties herein were formerly adjudicated in the 30th District Court of Young County, Texas, at the June term 1925, in a cause styled J. K. P. Hughes v. John Couger et al., No. 7748, and 7749, and 7778 consolidated, as more fully appear by the judgment roll of this court, and that said judgment was more than two years before the filing of the pleas herein, and no appeal was taken by the said John Couger and his wife Breckie E. Couger, and no writ of error sued out and said judgment has long since become final and determined and in said judgment it was determined.

"1. That S. J. Allen filed an answer and appeared in person and by counsel; and that John Couger and wife Breckie E. Couger were duly cited to appear and answer in said cause, and filed answers and appeared in person and by counsel.

"2. It was further determined in said judgment that S. J. Allen had a demand which was liquidated and proved by an instrument in writing, and that there was due him, principal and interest $3,000.60, and $300.06 attorney's fees, making a total of $3,300.66 that was due and unpaid by John Couger and Breckie E. Couger, and that said indebtedness was secured by a first and superior lien upon the lands described in said Allen's deed of trust and note and especially upon the fourth tract, known as the Luther Brawner Sr. Survey, Abstract #34, situated in Stephens and Palo Pinto County, Texas, and that said abstract was not the homestead of John Couger and wife Breckie E. Couger on July 13, 1922, and that said land was the homestead of the defendants at the time of said judgment, subject, however, to the lien thereon and debt held by S. J. Allen, as found by the court.

"3. That the pleadings of John Couger and Breckie E. Couger now before the court are no more than a collateral attack upon said judgment.

"Wherefore, plaintiff prays the said cross action and plea of intervention be dismissed and for all costs."

The record discloses that a jury had been invoked in behalf of the defendant and intervener, and that the jury had been duly impaneled and sworn prior to the noon hour, whereupon the court dismissed the jury until the afternoon session, with the statement that he would in the meantime hear the plaintiff's plea in abatement. The parties thereupon offered evidence, which, in behalf of the plaintiff, Allen, consisted largely of the judgment in the consolidated suit and the testimony of the plaintiff, Allen, to the effect that, at the time of the execution of the $2,500 note by John Couger and wife in 1922, John Couger told him that his homestead was in the town of Graham, where they both lived, and not upon the Brawner survey, and that such in fact was the case. Mr. C. F. Marshall testified in behalf of the plaintiff that he represented Mr. Allen in the consolidated case, and had made diligent inquiry and investigation to ascertain whether an answer had been filed for Breckie E. Couger by Judge Penix with reference to homestead rights, but that he could find no such answer. His recollection was however, that one was filed, but the only one found among the papers was one by John Couger. The substance of the testimony of Judge Penix, representing Mr. and Mrs. Couger et al., was that he filed an answer in behalf of John Couger and wife setting up the Luther Brawner survey as their homestead; that John Couger had discussed the matters involved in the consolidated suit in detail, but he did not know whether he went into details with Mrs. Couger; "I don't think much I did, only in a casual way." Wesley Johnson also was representing, among others, Mr. and Mrs. Couger, but did not recall that he had discussed the homestead matter with Mrs. Couger. "I would not say that Mrs. Couger specifically discussed the Hughes case or authorized me to file an answer for her, except in the original Hughes case, but Mr. Couger came to my office and asked that I file an answer in all of those cases for both of them, and as to this homestead matter for both of them, and attend to all of them that was necessary. * * * I don't know whether there was any answer filed for Breckie E. Couger in the Allen case, as I was not interested directly in the case. These are copies of the answers filed and they are filed for John Couger alone, they all seem to be filed that way."

John Couger and Breckie E. Couger both testified substantially as they pleaded, and also to the effect that the Brawner survey had been purchased in 1901, and had continuously thereafter been their actual homestead; that, some time prior to the execution of the original note of $2,500 to Allen Mr. Couger had built a residence in the town of Graham, to which the wife and children removed, and therein resided during school months, after which they at all times returned to their original homestead on the Brawner survey, Mr. Couger at all times remaining thereon. Mrs. Couger explicitly testified that no papers had been served upon her in the consolidated suit. Mr. Couger testified that he did not authorize Judge Penix to file any pleadings for his wife; that he did not tell his wife anything about the Allen suit; that she was not present at the time of the trial; that he did not know any judgment was rendered against his homestead until after the court had adjourned for the term; that he agreed with no one to waive his homestead claim. Mrs. Couger further testified that, at the time she signed the original deed of trust, it was not explained to her that she was giving a mortgage on her homestead; that at the time she signed that trust deed she was living on the Brawner survey. There was other testimony corroborating that of Mr. and Mrs. Couger, relating to the temporary occupation of the house in Graham, and of the continuous occupation of the Brawner survey as their homestead.

The parties to the consolidated suit were numerous, and the judgment therein covers, in disposing of the various interest and parties, some thirty-nine pages of the transcript. It recites that John Couger and wife, Breckie E. Couger, were duly cited and appeared in person and by counsel and answered; that S. J. Allen had a liquidated claim, being an instrument in writing on which there was due principal, interest, and attorney's fees amounting to $3,300.66, secured by a first lien on the Brawner survey; "that the Luther Brawner Survey * * * was not the homestead of John Couger and wife, Breckie E. Couger, on July 13, 1922, but that said Brawner Survey as aforesaid is now, at this time, the homestead of John Couger and wife, Breckie E. Couger, but that the same is subject to the lien securing the payment of the indebtedness held by S. J. Allen, as herein found," and judgment was rendered accordingly.

It also appears that on the trial of the consolidated suit, and before the entry of judgment therein, the following agreement was entered into, to wit:

"It is agreed between the parties herein, that is, John Couger and wife, and the defendant, S. J. Allen, that representations were made to Mr. Allen at the time of loaning this money, towit, July 13th, 1922, and that representations were made that John Couger and wife resided in Graham, Young County, Texas, and that S. J. Allen relied upon said representations and believed that this was their homestead.

"Therefore, it is agreed that the Luther Brawner Survey, Abstract #34, situated in

Palo Pinto and Stephens Counties, Texas, is the homestead of John Couger and wife, but that the same is subject to the rights of S. J. Allen as set out and described in his note and deed of trust of date July 13th, 1922, and that said homestead is legally and lawfully encumbered with said indebtedness, but that said survey of land is the homestead of John Couger and wife at this time.

"It is further agreed that the land on which S. J. Allen holds a first lien, and on which B. W. King owns a first lien, that the last lands described will be sold first exclusive of the L. Brawner Survey, and that the proceeds derived from such sale will be credited to the payment of the notes held by S. J. Allen."

Inferentially, the judgment in the consolidated suit foreclosing the trust deed lien on the Brawner survey appears to have been based on the agreement just copied, but, as before indicated, both Mr. and Mrs. Couger testified that they made no such agreement nor authorized any one to enter into it for them.

Upon the conclusion of the testimony, the court announced that he was going to sustain the plaintiff's plea in abatement, and the jury was called in and peremptorily instructed *to find for Allen in accordance with the prayer* of his petition, and the judgment was rendered in accordance with the verdict returned, as the court had directed. From this judgment an appeal has been duly prosecuted to this court.

■ The transcript discloses that the defendants excepted to the action of the court in sustaining the plea in abatement, and also objected and excepted to the court's charge directing a verdict in favor of the plaintiff, "because their defense as set up in their answer and cross-complaint and the plea in intervention should be submitted to the jury upon the facts alleged, and they be permitted to introduce proof before the jury in support of the same." The indorsement upon the written objections made by the trial judge shows that "they were presented and refused before the court's charge was read to the jury."

We think that the court erred in sustaining the plaintiff's plea in abatement and in giving the peremptory instruction to the jury. While in its most extended significance the plea may properly be designated as one in abatement, yet, as applied in the present case, we think the plea more properly one in bar. In Texas Jurisprudence, vol. 1, page 23, § 5, it is said:

"The general rule is that whenever the subject matter of the plea or defense is that the plaintiff cannot maintain any suit at any time in respect of the supposed cause of action such matter should be pleaded in bar, while that which merely defeats the present proceeding and does not show that the plaintiff is forever concluded should be pleaded in abatement. Pleas in bar, unlike pleas in abatement, offer matters which are conclusive answers or defenses to actions on the merits."

■■ The evidence, if it does not preponderate in favor of appellants, is certainly conflicting on the very vital issues relating to whether or not the Brawner survey was the homestead of John Couger and wife at the date of the note and trust deed, executed by them in 1922, by virtue of which the lien on the homestead was claimed and awarded to Allen in the consolidated suit. Appellants had demanded a jury trial, and a jury was duly impaneled and in attendance. Appellants' right to a trial by the jury was constitutional, and should not have been denied, unless waived. It appears in the court's findings that appellants made no objection to the introduction of the testimony, and at the time did not call for a trial by the jury of the issues of fact, but, construing the record before us as a whole, counsel for appellants seems to have been under the impression that the action of the court in hearing the plea in abatement involved the various exceptions, and that the whole proceeding was but preliminary to the trial upon the merits. We cannot think that the appellants, under the circumstances, must by virtue of such failures be held to have waived the jury, in view of the fact that, before the peremptory charge was given, appellants specifically requested the court to permit the jury to pass on the merits.

This, so far as disclosed by the record, would not have caused a continuance or postponement or consumed any great length of time necessary in the discharge of other duties on the part of the court. See Blair v. Paggi (Tex. Com. App.) 238 S. W. 639; 35 Corpus Juris, 201; 16 R. C. L. 217.

Appellants raise several other questions, but, in view of the criticisms made, the questions are not likely to again arise, and we need not discuss them. For the error of the court in giving the peremptory instruction, however, the judgment is reversed and the cause remanded.